NOTICE OF SUIT TO SHERIFF OF ALLEGHENY CO.
You are hereby notified that on _Sept 21, 2005_
a COMPLAINT has been (filed/reindexed) in this case
and you are required to serve the same on or before the
_21st_ day of _Oct_, 20 _05_
MICHAEL LAMB, PROTHONOTARY

) SHERIFF
) 
) SURCHARGE
) 
) MILEAGE

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

J. MARCUS WHOLESALERS, INC.,
JACK MARCUS, PHILIP MARCUS
and DAVID HABER,

        Plaintiffs,

        vs.

ASSURANCE COMPANY OF AMERICA,

        Defendant.

CIVIL DIVISION

No. GD 05- _24656_

Issue No.

Code:  010

COMPLAINT IN CIVIL ACTION

Filed on behalf of Plaintiffs,
J. MARCUS WHOLESALERS, INC.,
JACK MARCUS, PHILIP MARCUS
and DAVID HABER

Counsel of Record for these Parties:

ROBERT J. GARVIN, ESQUIRE
PA ID #38598

GOLDBERG, KAMIN & GARVIN
PA Firm #497

1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219

(412) 281-1119

To _____Defendant_____
    You are hereby notified to plead to the
enclosed ___Complaint_____ within
twenty (20) days from service hereof or a
default judgment may be entered against you.

JURY TRIAL DEMANDED.

Attorney for  Plaintiffs

f:\wpdocs\Marcus, J Wholesalers\complaint
September 1, 2005 (11:00am) File #13496

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| J. MARCUS WHOLESALERS, INC., JACK MARCUS, PHILIP MARCUS and DAVID HABER, | CIVIL DIVISION |
| | No. GD 05- $24656$ |
| Plaintiffs, | Issue No. |
| vs. | Code:  010 |
| ASSURANCE COMPANY OF AMERICA, | COMPLAINT IN CIVIL ACTION |
| Defendant. | Filed on behalf of Plaintiffs, J. MARCUS WHOLESALERS, INC., JACK MARCUS, PHILIP MARCUS and DAVID HABER |

Counsel of Record for these Parties:

ROBERT J. GARVIN, ESQUIRE
PA ID #38598

GOLDBERG, KAMIN & GARVIN
PA Firm #497

1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219

(412) 281-1119

To _____ **Defendant** _____
   You are hereby notified to plead to the
enclosed ____ **Complaint** _____ within
twenty (20) days from service hereof or a
default judgment may be entered against you.

JURY TRIAL DEMANDED.

_____
Attorney for  **Plaintiffs**

ALLEGHENY COUNTY
PROTHONOTARY
05 SEP 21 AM 11:15
FILED

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

J. MARCUS WHOLESALERS, INC.,              :
JACK MARCUS, PHILIP MARCUS
and DAVID HABER,                          :

          Plaintiffs,                      :          No. GD 05-

    vs.                                   :

ASSURANCE COMPANY OF AMERICA,             :

          Defendant.                       :

## NOTICE

    You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

    IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
THE ALLEGHENY COUNTY BAR ASSOCIATION
920 CITY-COUNTY BUILDING
PITTSBURGH, PENNSYLVANIA 15219
TELEPHONE: (412) 261-0518

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| J. MARCUS WHOLESALERS, INC., | : | |
| JACK MARCUS, PHILIP MARCUS | | |
| and DAVID HABER, | : | |
| | | |
| Plaintiffs, | : | No. GD 05- |
| | | |
| vs. | : | |
| | | |
| ASSURANCE COMPANY OF AMERICA, | : | |
| | | |
| Defendant. | : | |

COMPLAINT IN CIVIL ACTION

AND NOW COME the Plaintiffs, J. MARCUS WHOLESALERS, INC.. JACK
MARCUS, PHILIP MARCUS and DAVID HABER, by and through their attorney, ROBERT J.
GARVIN, ESQUIRE and submit the following Complaint in Civil Action and in support thereof
aver as follows:

I.   PARTIES

1.   Plaintiff, J. Marcus Wholesalers, Inc. ("J. Marcus"), is a corporation organized
and existing in accordance with the laws of the Commonwealth of Pennsylvania, and maintains a
principal place of business at 1728 Smallman Street, Allegheny County, Pennsylvania 15222.

2.   Plaintiff, Jack Marcus, is an adult individual who resides at 117 Thornberry
Drive, Churchill Borough, Allegheny County, Pennsylvania 15235.  Jack Marcus is an officer and
shareholder of J. Marcus.

3.   Plaintiff, Philip Marcus, is an adult individual who resides at 1000 Grandview Avenue, Unit 605, City of Pittsburgh, Allegheny County, Pennsylvania 15211. Philip Marcus is an employee of J. Marcus.

4.   Plaintiff, David Haber, is an adult individual who resides at 1320 Murray Avenue, City of Pittsburgh, Allegheny County, Pennsylvania 15217. David Haber is an employee of J. Marcus.

5.   The Defendant, Assurance Company of America ("Assurance"), is a corporation in the business of providing insurance and is licensed to conduct business in the Commonwealth of Pennsylvania. Assurance maintains an administrative office at 1400 American Lane, Schaumberg, Cook County, Illinois 60196.

## II.   JURISDICTION

6.   Jurisdiction is proper pursuant to 42 Pa.C.S.A. §5301 as Assurance is qualified to conduct business in the Commonwealth of Pennsylvania and regularly, continuously and systematically conducts the same within the Commonwealth.

7.   Venue is proper in the Court of Common Pleas of Allegheny County, Pennsylvania, as Assurance regularly conducts business in Allegheny County, the causes of action set forth herein arose in Allegheny County, and the transactions and occurrences underlying this lawsuit arose in Allegheny County.

## III.   GENERAL ALLEGATIONS

8.   J. Marcus operates a wholesale business of selling diverse goods and merchandise at the location identified in Paragraph 1 above.

9.   Assurance issued a Commercial General Liability Policy of insurance ("Policy") under Policy No. PAS 36821230 to J. Marcus, which was in effect for a policy period of September 30, 2002 to a time when it was either canceled or non-renewed. A true and correct copy of the Policy as certified by Assurance is attached hereto and made part hereof as Exhibit "A".

10.   At all times relevant hereto, the Policy was in effect during the events hereinafter complained of by virtue of the continued payment of the required premiums by J. Marcus.

11.   Pursuant to Section II of the Policy, Jack Marcus, Philip Marcus and David Haber, as officers and/or employees of J. Marcus, are insureds for the purpose of any covered event.

12.   The Policy provides commercial general liability coverage, with a coverage limit of One Million ($1,000,000.00) Dollars for personal injury and advertising injury.

13.   Coverage B of the Policy provides the following coverage:

COVERAGE  B.  PERSONAL  AND  ADVERTISING INJURY LIABILITY

1.   Insuring Agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "<u>personal and advertising injury</u>" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But"

(1)   The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

(2)     Our right and duty to defend end when we
have used up the applicable limit of insurance
in the payment of judgments or settlements
under Coverages A or B or medical expenses
under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b.     This insurance applies to "**personal and advertising injury**" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Emphasis supplied.)

14.     The terms "Personal and Advertising Injury" are defined under the Policy as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.     Oral or written publication of material that violates a person's right of privacy;

f.     Misappropriation of advertising ideas or style of doing business; or

g.     **Infringing upon another's copyright, trade dress or slogan in your "advertisement".**

(Emphasis supplied.)

15.   The term "Advertisement" is defined under the Policy as follows:

"**Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.** (Emphasis supplied.)

16.   On or about September 26, 2003, Robert Real ("Real") filed a Complaint in the United States District Court, Western District of Pennsylvania against J. Marcus and Philip Marcus at Case No. 03-1439 ("District Court Complaint"). A true and correct copy of the District Court Complaint is attached hereto and made part hereof as Exhibit "B".

17.   The District Court Complaint alleges that J. Marcus and Philip Marcus engaged in certain acts which constituted infringements upon a certain patent and copyright owned by the Plaintiff. The District Court Complaint contains the following causes of action:

Count I - Infringement of U.S. Patent No. D464,590.

Count II - Copyright Infringement.

Count III - Common Law Unfair Competition

18.   Paragraphs 20 and 21 of the District Court Complaint contain the following allegations:

20.   Since the effective date of its copyright registration, Plaintiff has offered for sale, and sold to the public his copyrighted artwork. The copyrighted artwork is advertised online, through brochures and catalogs, and in various other manners customary in the trade. See Plaintiff's Exhibit "4", attached hereto.

21.   Upon information and belief, subsequent to the effective date of Copyright Registration No. Vau 530-815, Defendants reproduced flags either substantially similar or identical to Plaintiff's copyrighted work. Defendants have widely published, distributed, and sold such reproductions ("JMW's counterfeit goods").

(Emphasis supplied.)

19.     On or about May 11, 2004, Heather M. Miranda ("Miranda"), Account Specialist for Assurance, issued a letter disclaiming any coverage for defense and indemnification for the claims made against J. Marcus and Philip Marcus in the District Court Complaint. Attached hereto and made part hereof as Exhibit "C" is a true and correct copy of said letter.

20.     In spite of the counts in the District Court Complaint alleging patent and copyright infringement and in complete disregard for the allegations set forth in Paragraphs 20 and 21 of the District Court Complaint, Assurance declined to provide a defense and/or indemnification under the personal and advertising injury portion of the General Liability Policy for the following reasons:

> The suit against the insured does not fall within the definition of "personal and advertising injury" above. <u>The complaint does not allege that the plaintiff was injured because of your advertising activity. They allege injury from the sale of their product and not that any advertisement that:</u> disparaged or defamed anyone or a product, violated a person's right of privacy, misappropriated ideas, or <u>infringed upon anyone's copyright, trade dress or slogan. As such, the allegations in the suit are not covered under Section 1. Coverage B.</u>
>
> (Emphasis supplied.)

21.     On or about June 1, 2004, Real filed an Amended Complaint in the U.S. District Court Action adding Jack Marcus and David Haber as Defendants. The Amended Complaint maintained the identical causes of action and merely added Jack Marcus and David Haber as Defendants. In particular, Real again repeated the allegations set forth in Paragraphs 20 and 21 of the original Complaint verbatim. Attached hereto and made part hereof as Exhibit "D" is a true and correct copy of the Amended Complaint.

22.     The Plaintiffs herein engaged the services of the law firm of Leech, Tishman, Fuscaldo and Lampl to defend them with respect to the U.S. District Court Action.

23.     Discovery produced in the U.S. District Court Action clearly reflected that J. Marcus did publish and advertise the trademarked and copyrighted material in publications, advertisements and brochures directed to its customers and potential customers.

24.   On or about April 19, 2005, Real and J. Marcus, Philip Marcus, Jack Marcus and David Haber entered into a Mutual Release and Settlement Agreement which required that J. Marcus make substantial periodic payments to Real in the total amount of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars in settlement of the Real claims.

25.   In connection with the defense of the District Court Action, the Plaintiffs herein were required and continues to expend substantial sums for attorney's fees, costs and expenses.

COUNT I

BREACH OF CONTRACT

26.   Plaintiffs incorporate by reference Paragraphs 1 through 25 above as though fully set forth at length herein.

27.   Assurance was obligated under the personal and advertising coverage of the Policy to provide the Plaintiffs with a defense and indemnity in connection with the District Court Action for the following reasons:

    (a)   Real claimed a copyright and trademark infringement.

    (b)   Real claimed that the protected material was advertised by J. Marcus.

    (c)   The material was advertised by J. Marcus to its customers and potential customers by was of brochures, catalogs and the like during the policy period.

28.   Assurance's failure to provide the Plaintiffs with a defense and/or indemnification constituted a breach of the insurance contract pursuant to which Plaintiffs are entitled to bring this action.

29. As a direct and proximate result of Assurance's breach of the instant contract, the Plaintiffs were required to expend substantial sums for settlement of the Real claims, including substantial legal fees and costs, all of which Assurance is liable for as a result of its failure to defend and indemnify the Plaintiffs.

WHEREFORE, Plaintiffs, J. Marcus Wholesalers, Inc., Jack Marcus, Philip Marcus and David Haber, demand judgment against the Defendant, Assurance Company of America, in an amount in excess of Twenty-five Thousand ($25,000.00) Dollars and costs of suit.

## COUNT II

### BAD FAITH 42 Pa.C.S.A. §8371)

30. Plaintiffs incorporate by reference Paragraphs 1 through 29 above as though fully set forth at length herein.

31. Assurance has acted in bad faith by refusing to provide the Plaintiffs with a defense and/or indemnification when they were clearly required to do so based upon the allegations of the Complaint set forth in Paragraph 18 above, the Counts set forth in the Complaint and the insurance contract.

32. Assurance's failure to provide a defense and/or indemnification constitutes bad faith pursuant to the provisions of 42 Pa. C.S.A. §8371.

33. The determination of Assurance to deny a defense and indemnity was unconscionable in light of the allegations set forth in the Real Complaint of trademark and copyright infringement and the advertising of the same by J. Marcus to its customers and potential customers.

34. Representatives of J. Marcus cooperated with Assurance during the investigation of the claim and advised representatives of Assurance that the copyrighted and trademarked material had been advertised.

35.   Pursuant to 42 Pa.C.S.A. §8371, the Plaintiffs are entitled to interest on the amount of their claim in an amount equal to the prime rate of interest plus three (3%) percent, punitive damages, court costs and legal fees.

WHEREFORE, Plaintiffs, J. Marcus Wholesalers, Inc., Jack Marcus, Philip Marcus and David Haber, demand judgment against the Defendant, Assurance Company of America, in an amount in excess of Twenty-five Thousand ($25,000.00) Dollars, together with interest at the statutory rate, punitive damages, legal fees, costs and expenses, and any other damages which may be asserted pursuant to 42 Pa.C.S.A. §8371.

Respectfully submitted,

ROBERT J. GARVIN
Attorney for Plaintiffs,
J. MARCUS WHOLESALERS, INC.,
JACK MARCUS, PHILIP MARCUS
and DAVID HABER

## VERIFICATION

I, _____Jack Marcus_____, authorized representative of J. Marcus Wholesalers, Inc., one of the Plaintiffs in the within matter, hereby certify that I am authorized to make this Verification on behalf of J. Marcus Wholesalers, Inc., and that the averments set forth in the foregoing Complaint in Civil Action are true and correct to the best of my knowledge, information and belief.

I understand that this Verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

J. MARCUS WHOLESALERS, INC.

By: _Jack Marcus_____

Date: _September 12, 2005_____

VERIFICATION

I, JACK MARCUS, one of the Plaintiffs in the within matter, hereby certify that the averments set forth in the foregoing Complaint in Civil Action are true and correct to the best of my knowledge or information and belief.

I understand that this verification is made subject to the penalties of 18 Pa.C.S.A. Section 4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, we may be subject to criminal penalties.

_Jack Marcus_
JACK MARCUS

Date: September 12, 2005

## VERIFICATION

I, PHILIP MARCUS, one of the Plaintiffs in the within matter, hereby certify that the averments set forth in the foregoing Complaint in Civil Action are true and correct to the best of my knowledge or information and belief.

I understand that this verification is made subject to the penalties of 18 Pa.C.S.A. Section 4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, we may be subject to criminal penalties.

_____
PHILIP MARCUS

Date:____9/12/05_____

<u>VERIFICATION</u>

I, DAVID HABER, one of the Plaintiffs in the within matter, hereby certify that the averments set forth in the foregoing Complaint in Civil Action are true and correct to the best of my knowledge or information and belief.

I understand that this verification is made subject to the penalties of 18 Pa.C.S.A. Section 4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, we may be subject to criminal penalties.

_____
DAVID HABER

Date:_____



**ZURICH**

<u>Verification Of Policy Records</u>

The attached record constitutes documents relevant to the contents of policy
PAS 36821230 effective 09/30/02, reprinted as of 09/29/03, generated from
computer data maintained by the issuing company.  Cosmetic changes not
affecting coverage may have occurred to the format of the policy over time.

Hope turner
_____
Name

*Hope Turner*
*Records Management Coordinator*

7-27-05
_____
Date

**Zurich NA**

**LANIER**
Records Management

3910 Keswick Road
Baltimore, Maryland 21211
USA
Phone 410-554-4107
Fax 410-554-4100



EXHIBIT

A

416

Process Date:        07/24/2005

Policy Number:       PAS 36821230

Requestor Name:      TURNER/ MIRANDA

# ATTACHED ARE THE POLICIES THAT
# YOU REQUESTED TO BE RETRIEVED AND
# RETURNED TO YOU

466



ZURICH

# precision portfolio policy

Zurich North America
Small Business

A 81 00

wholesale
INSURANCE PROGRAM

740276 (Ed. 5-02)

467

# NOTICE TO POLICYHOLDER

COVERAGE CHANGE

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION IN YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

THIS NOTICE HAS BEEN PREPARED IN CONJUNCTION WITH THE IMPLEMENTATION OF CHANGES TO YOUR POLICY.

Your policy has been converted from a term policy with an effective date and an expiration date to a continuous policy that will automatically renew on each policy anniversary date unless cancelled or nonrenewed.

Therefore, your policy will be deemed to expire annually on the anniversary of its inception. We may non-renew the policy effective upon any anniversary date of policy inception subject to any notification requirements imposed by law. We may condition the continuance of coverage beyond any anniversary date of policy inception upon increase in premium, change in limits, change in type of coverage, elimination, reduction or restriction of coverage or increased deductible subject to any notification requirements imposed by law.

If we have not issued notice of nonrenewal effective upon an anniversary date of policy inception, the policy will renew automatically without any lapse in coverage provided timely payment of premium is received. If we condition the continuation of coverage as described above beyond an anniversary of policy inception and you accept the condition(s) by timely payment of premium, the policy will renew automatically without any lapse in coverage.

9C0518 Ed. 11-99

468

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - YEAR 2000 AND OTHER
# DATE-RELATED PROBLEMS

This endorsement modifies insurance provided by:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CONTRACTORS TOOLS AND EQUIPMENT COVERAGE FORM
> STANDARD PROPERTY POLICY

The following additional exclusion supersedes any policy provision to the contrary:

A.  We will not pay for any loss ("loss"), cost, expense or damage (including, but not limited to, any loss of Business Income ("business income"), Extra Expense ("extra expense") incurred, or Expediting Expenses incurred) caused, whether wholly or in part, directly or indirectly, regardless of any other cause or event that contributes concurrently or in any sequence to that loss ("loss"), cost, expense or damage by the following:

  1.  Any actual, possible, potential, anticipated, or alleged failure, malfunction, deficiency, fault, inadequacy, problem, or reduced usefulness of:

     a.  Any of the following (whether owned, possessed, controlled, or operated by any insured or any others):

        (1)  Computer hardware;

        (2)  Computer software ("software");

        (3)  Computer applications;

        (4)  Computer operating systems and related software;

        (5)  Computer networks, networking equipment, or data transmission systems;

        (6)  An "embedded system";

        (7)  Electronic media or data; or

        (8)  Any other computerized or electronic equipment, devices or components; or

     b.  Any products, services, or data, whether owned, possessed, controlled, provided, or performed by, for or on behalf of any insured or any others, that directly or indirectly uses or relies upon, in any manner, any of the items listed in Paragraph A.1.a. above;

        relating to or resulting from any date-related function, operation or data including, but not limited to, any function, operation or data related to the year 2000 and beyond.

  2.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, supervision, or any other service, provided or performed, or not provided or performed, at any time, to test for, determine, evaluate, rectify, verify or check for any possible, potential, anticipated, actual or alleged failure, malfunction, deficiency, fault, inadequacy, problem or reduced usefulness of any of the items described in Paragraphs A.1.a. and A.1.b. above relating to or resulting from any date-related function, operation or data.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997
(For use with Commercial Property and other related forms)

9C0301 Ed. 6-98

462

B. If an excluded cause of loss ("loss"), cost, expense or damage as described in Paragraph A. of this endorsement results:

1. In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part, the Commercial Property Coverage Part, the Contractors Tools and Equipment Coverage Form, or the Standard Property Policy;

2. In an "accident" if Mechanical, Electrical and Pressure Equipment Coverage is shown in the Declarations along with a limit of insurance; or

3. In elevator collision resulting from mechanical breakdown,

we will pay only for that portion of the loss ("loss"), cost, expense or damage that directly results from such Covered Cause of Loss, "accident" or elevator collision, subject to the other terms, conditions and exclusions of this policy.

C. We will not pay for repair, replacement, modification, enhancement, change, alteration, correction or upgrade of any items described in Paragraphs A. 1.a. and A. 1.b. above in order to provide any such item the ability to recognize, process, distinguish, interpret or accept any date–related information or data.

D. For purposes of this policy, direct physical loss or damage, or physical damage, shall not be deemed to include any possible, potential, anticipated, actual, or alleged failure, malfunction, deficiency, fault, inadequacy, problem, or reduced usefulness relating to or resulting from any date–related function, operation, or data.

E. For purposes of this endorsement, the following definition is added:

"Embedded system" means any microprocessor, computer chip, integrated circuit, embedded chip, or transistorized module of any type which is a component of any electronic or mechanical device, appliance, or equipment. "Embedded system" also means any operating system, application, or software that is used with any such microprocessor, computer chip, integrated circuit, embedded chip, or transistorized module.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997
(For use with Commercial Property and other related forms)

9C0301 Ed. 6–98

470

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - YEAR 2000 AND OTHER
# DATE-RELATED PROBLEMS

This exclusion modifies insurance provided by:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL UMBRELLA COVERAGE FORM
    HEALTH CARE PROFESSIONAL SERVICES LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

With respect to coverage(s) provided under this policy, the following additional exclusion applies and supersedes any policy provision to the contrary.

A. This insurance does not apply to any sums the insured becomes legally obligated to pay as damages, or to any loss, cost or expense, arising out of or traceable to, whether wholly or in part, directly or indirectly, regardless of any other cause or event that contributes concurrently or in any sequence to such damages, loss, cost or expense:

1. Any possible, potential, anticipated, actual, or alleged failure, malfunction, problem, deficiency, fault, inadequacy, problem or reduced usefulness of:

    a. Any of the following (whether owned, possessed, controlled, or operated by any insured or any others):

        (1) Computer hardware;

        (2) Computer software;

        (3) Computer applications;

        (4) Computer operating systems and related software;

        (5) Computer networks, networking equipment, or data transmission systems;

        (6) An "embedded system";

        (7) Electronic media or data; or

        (8) Any other computerized or electronic equipment, devices or components; or

    b. Any products, services, or data, whether owned, possessed, controlled, provided, or performed by, for or on behalf of any insured or any others, that directly or indirectly uses or relies upon, in any manner, any of the items listed in Paragraph A.1.a. above;

    c. "Your product" or any part of it; or

    d. "Your work" or any part of it;

    relating to or resulting from any date-related function, operation or data including, but not limited to, any function, operation or data related to the year 2000 and beyond.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997
(For use with Liability and other related forms)

9C2319 Ed. 06-98

471

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, supervision, or any other service, provided or performed, or not provided or performed, at any time to test for, determine, evaluate, rectify, verify or check for any possible, potential, anticipated, actual or alleged failure, malfunction, deficiency, fault, inadequacy, or reduced usefulness of any of the items described in Paragraph A.1.a. through Paragraph A.1.d. above relating to or resulting from any date-related function, operation or data.

3. Any failure to warn, alert, caution, notify or advise of any possible, potential, anticipated, actual or alleged failure, malfunction, deficiency, fault, inadequacy, or reduced usefulness of any of the items described in Paragraph A.1.a. through Paragraph A.1.d. above relating to or resulting from any date-related function, operation or data.

B. For purposes of this endorsement, the following definition is added:

"Embedded system" means any microprocessor, computer chip, integrated circuit, embedded chip, or transistorized module of any type which is a component of any electronic or mechanical device, appliance, or equipment. "Embedded system" also means any operating system, application, or software that is used with any such microprocessor, computer chip, integrated circuit, embedded chip, or transistorized module.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1997
(For use with Liability and other related forms)

9C2319 Ed. 06-98

472



**ZURICH**

## ASSURANCE COMPANY OF AMERICA

ADMINISTRATIVE OFFICES
1400 AMERICAN LANE
SCHAUMBURG, ILLINOIS   60196

## PRECISION PORTFOLIO POLICY

**For**

J. MARCUS WHOLESALERS
1728 SMALLMAN STREET
PITTSBURGH PA 15222-4310

**By**

FIRST NATIONAL INSURANCE AGENCY INC
100 PARK MANOR DR
PITTSBURGH PA 15205-1012

In witness whereof, the Company has executed this policy and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative.

President

Secretary

9SS006 Ed. 3-00

473



# ZURICH

## PRECISION PORTFOLIO POLICY INDEX

### YOUR POLICY CONSISTS OF THE FOLLOWING SECTIONS AND COVERAGE PARTS:

**Common Policy Materials**

- Common Declarations
- Supplemental Declarations, if necessary
- Common Policy Conditions
- Common Policy Forms and Endorsements, if necessary

**Commercial Property Coverage Part**

- Property Declarations
- Building and Personal Property Schedule
- Special Schedules of Property, if necessary
- Supplemental Declarations, if necessary
- Building and Personal Property Coverage Form
- Commercial Crime Coverage Form
- Commercial Property Endorsements, if necessary

**Commercial General Liability Coverage Part**

- Commercial General Liability Declarations
- General Liability Schedule
- Supplemental Declarations, if necessary
- Commercial General Liability Coverage Form
- Commercial General Liability Endorsements, if necessary

**Commercial Umbrella Coverage Part**

- Commercial Umbrella Declarations
- Supplemental Declarations, if necessary
- Business Umbrella Policy Form
- Commercial Umbrella Endorsements, if necessary

**Forms and Endorsements Applicable (list)**

| BILL | POLICY NUMBER | TC | PRODUCER NUMBER | AC | ACCOUNT NUMBER | AUDIT |
|------|---------------|-----|-----------------|-----|----------------|-------|
| 474 | D | PAS 36821230 | | 18840363 | 150 | M008912281-001-00001 | NONE |

BRANCH Z3  ZURICH GROUP-CO                                    RP  EFF 09/29/2003



**ZURICH**

# ASSURANCE COMPANY OF AMERICA
## PRECISION PORTFOLIO POLICY - COMMON DECLARATIONS
## PRECISION AMERICA
## WHOLESALE PROGRAM

This policy consists of the declarations as well as the coverage forms and endorsements listed on the Forms and Endorsements Applicable List.

| NAMED INSURED AND MAILING ADDRESS | AGENCY NAME AND MAILING ADDRESS |
|---|---|
| J. MARCUS WHOLESALERS<br>1728 SMALLMAN STREET<br>PITTSBURGH PA 15222-4310 | FIRST NATIONAL INSURANCE AGENCY INC<br>100 PARK MANOR DR<br>PITTSBURGH PA 15205-1012<br>(412) 446-1010 |

| BRANCH NAME AND ADDRESS | POLICY PERIOD | |
|---|---|---|
| ZURICH GROUP-COLUMBUS<br>P.O. BOX 10197<br>JACKSONVILLE, FL 32247-0197<br>(800) 800-3907 | **FROM**<br><br>09/30/2002<br>12:01 a.m. | **TO**<br><br>UNTIL CANCELLED/<br>NON-RENEWED |

BUSINESS ENTITY:   CORPORATION

### POLICY PREMIUMS

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts. This premium may be subject to adjustment.

|  | PREMIUM |
|---|---|
| COMMERCIAL PROPERTY AND GENERAL LIABILITY | $ 16,403.00 |
| COMMERCIAL UMBRELLA COVERAGE PART | $ 604.00 |
| PREMIUM SIZE CREDIT | $ 820.00- |
| **TOTAL ANNUAL PREMIUM** | $ 16,187.00 |

Countersigned by _____   _____
                              Authorized Representative                              Date

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984.
Copyright, Maryland Casualty Company, 1992.

**COMMON**
9SS007 Ed. 3-00                        INSURED'S COPY                        07/24/2005

| BILL | POLICY NUMBER | TC | PRODUCER NUMBER | AC | ACCOUNT NUMBER | AUDIT |
|------|---------------|-----|-----------------|-----|----------------|-------|
| D | PAS 36821230 | | 18840363 | 150 | MC08912281-001-00001 | NONE |

475

BRANCH Z3 ZURICH GROUP-CO         RP   EFF 09/29/2003



## PRECISION PORTFOLIO POLICY
## SUPPLEMENTAL DECLARATIONS
## PRECISION AMERICA
## WHOLESALE PROGRAM

| COVERAGE PART(S) AND FORM OR ENDORSEMENT NUMBER | FORM OR ENDORSEMENT NAME AND FORM OR ENDORSEMENT SUPPLEMENTAL INFORMATION |
|---|---|
| COMMON<br><br>9S5007     0300 | COMMON POLICY DECLARATIONS<br>RETAINED MINIMUM PREMIUM<br>Commercial Property & Commercial General Liability - $100 |
| | |
| | |
| | |
| | |
| | |

**COMMON**
9S5008 Ed. 3-00

INSURED'S COPY

07/24/2005

1. 2. 1

47S

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

477

F.  Transfer Of Your Rights And Duties Under This
    Policy

    Your rights and duties under this policy may
    not be transferred without our written con-
    sent except in the case of death of an indi-
    vidual named insured.

If you die, your rights and duties will be trans-
ferred to your legal representative but only while
acting within the scope of duties as your legal
representative. Until your legal representative
is appointed, anyone having proper temporary
custody of your property will have your rights
and duties but only with respect to that prop-
erty.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

478

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDATORY ENDORSEMENT - POLICY TERM

This endorsement modifies provisions in the following forms:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    COMMERCIAL UMBRELLA COVERAGE PART
    COMMON POLICY CONDITIONS
    CONTRACTORS EQUIPMENT COVERAGE PART

If your policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception. We may non-renew the policy effective upon any anniversary date of policy inception subject to any notification requirements imposed by law. We may condition the continuance of coverage beyond any anniversary date of policy inception upon increase in premium, change in limits, change in type of coverage, elimination, reduction or restriction of coverage or increased deductible subject to any notification requirements imposed by law.

If we have not issued notice of nonrenewal effective upon an anniversary of policy inception, the policy will continue without any lapse in coverage provided timely payment of premium is received. If we condition the continuation of coverage beyond an anniversary of policy inception and you accept the conditions by timely payment of premium, the policy will continue without any lapse in coverage.

9C0034 Ed. 5-99

479

IL 00 21 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

Copyright, ISO Properties, Inc., 2001

480

2.  As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a)  Any "nuclear reactor";

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "in-

sured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2001

481

IL 02 46 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT—RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, Whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in—force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

Copyright, ISO Properties, Inc., 2001

482

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. Nonrenewal

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. Increase Of Premium

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

Copyright, ISO Properties, Inc., 2001

483

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

   Copyright, ISO Properties, Inc., 2001

484

IL 01 72 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
FARM COVERAGE PART

A. For insurance provided under the:

Boiler and Machinery Coverage Part
Capital Assets Program (Output Policy) Coverage Part
Commercial Inland Marine Coverage Part
Commercial Crime Coverage Part
Commercial Property Coverage Part

The TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY Common Policy Condition is replaced by the following:

F.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

If you die, this Coverage Part will remain in effect as provided in 1. or 2. below, whichever is later:

1.   For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

2.   Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

Coverage during the period of time after your death is subject to all provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

B. For insurance provided under the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part
Commercial Property Coverage Part
Farm Coverage Part

The following is added to the LOSS PAYMENT Loss Condition and supersedes any provision to the contrary:

NOTICE OF ACCEPTANCE OR DENIAL OF CLAIM

1.   Except as provided in 3. below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

a.   Accept your claim;

b.   Deny your claim; or

c.   Need more time to determine whether your claim should be accepted or denied.

If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

Copyright, ISO Properties, Inc., 2001

485

2.  If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in 1.c. above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

3.  The notice procedures in 1. and 2. above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

Copyright, ISO Properties, Inc., 2001

| BILL | POLICY NUMBER | TC | PRODUCER NUMBER | AC | ACCOUNT NUMBER | AUDIT |
|------|---------------|----|-----------------|----|----------------|-------|
| D | PAS 36821230 | | 18840363 | 150 | M008912281-001-00001 | NONE |

486

BRANCH Z3 ZURICH GROUP-CO                                    RP  EFF 09/29/2003



## ZURICH

### PRECISION PORTFOLIO POLICY
### COMMERCIAL PROPERTY DECLARATIONS

### PRECISION AMERICA
### WHOLESALE PROGRAM

This coverage part consists of this declarations form, the common policy conditions, and the coverage forms and endorsements indicated as applicable on the forms list.

For descriptions of premiums, see the attached buildings and personal property schedule.

Insurance at the described premises applies only for coverage for which a limit of insurance is shown. These may be found in this declarations and the attached schedules.

| PRIMARY PROPERTY COVERAGES | DEDUCTIBLE | LIMITS |
|-----------------------------|------------|--------|
| SCHEDULED BUILDINGS | $1,000 | SEE SCHEDULE |
| AUTOMATIC BUILDING INCREASE | NONE | 2.5% OF LIMITS |
| SCHEDULED PERSONAL PROPERTY | $1,000 | SEE SCHEDULE |
| PEAK SEASON PERSONAL PROPERTY INCREASE | NONE | 50% OF LIMIT |
| | | |
| | | |

| ADDITIONAL COVERAGES | DEDUCTIBLE | LIMITS |
|----------------------|------------|--------|
| ACCOUNTS RECEIVABLE* | NONE | $25,000 |
| ANTENNAE AND SATELLITES* | $1,000 | $1,000 |
| BI & EE - DEPENDENT PROPERTIES - 30 DAYS | NONE | ACTUAL LOSS SUSTAINED |
| BI & EE - NEWLY ACQUIRED PROPERTIES - 180 DAYS | NONE | $250,000 |
| LOSS OF BUSINESS INCOME (BI) AND EXTRA EXPENSE (EE) - 12 MOS | NONE | ACTUAL LOSS SUSTAINED |
| DEBRIS REMOVAL - EACH LOCATION | NONE | $10,000 |
| DEFERRED PAYMENTS | NONE | $5,000 |
| EDP EQUIPMENT AND MEDIA - BLANKET | $1,000 | $27,000 |
| EMPLOYEE DISHONESTY* | NONE | $10,000 |
| FINE ARTS - BLANKET* | $1,000 | $10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | NONE | $10,000 |
| FIRE EXTINGUISHING EQUIPMENT RECHARGE | NONE | $1,000 |
| FORGERY OR ALTERATION* | NONE | $10,000 |
| FREE-STANDING FENCES & WALLS* | $1,000 | $2,500 |

\* The limits for these coverages may be increased. Contact your agent.

**COMMERCIAL PROPERTY**

9S1016 Ed. 3-00                    INSURED'S COPY                    07/24/2005

| BILL | POLICY NUMBER | TC | PRODUCER NUMBER | AC | ACCOUNT NUMBER | AUDIT |
|------|---------------|-----|-----------------|-----|----------------|-------|
| D | PAS 36821230 | | 18840363 | 150 | M008912281-001-00001 | NONE |

497

BRANCH Z3  ZURICH GROUP-CO                                          RP  EFF 09/29/2003



# PRECISION PORTFOLIO POLICY
## COMMERCIAL PROPERTY DECLARATIONS
### PRECISION AMERICA
### WHOLESALE PROGRAM

| ADDITIONAL COVERAGES - Continued | DEDUCTIBLE | LIMITS |
|-----------------------------------|------------|--------|
| INSTALLATION* | $1,000 | $2,500 |
| INVENTORY AND APPRAISAL | NONE | $5,000 |
| LEASEHOLD INTEREST* | NONE | $10,000 |
| LOCK AND KEY REPLACEMENT | NONE | $1,000 |
| MONEY & SECURITIES - INSIDE THE PREMISES/OUTSIDE THE PREMISES* | NONE | $10,000/ $2,500 |
| MONEY ORDERS & COUNTERFEIT CURRENCY - $1,000 MAX. EACH ITEM | NONE | $5,000 |
| NEWLY ACQUIRED OR CONSTRUCTED BUILDINGS - 180 DAYS | $1,000 | $500,000 |
| OFF-PREMISES POWER OR WATER FAILURE* | $1,000 | $10,000 |
| PATTERNS, DIES & MOLDS* | $1,000 | $5,000 |
| PERSONAL EFFECTS AND PERSONAL PROPERTY OF EMPLOYEES | $1,000 | $2,500 |
| PERSONAL PROPERTY AT NEWLY ACQUIRED OR CONST. BLDGS. - 180 DAYS | $1,000 | $250,000 |
| PERSONAL PROPERTY AT OTHER LOCATIONS (INCLUDING EXHIBITIONS)* | $1,000 | $25,000 |
| PERSONAL PROPERTY IN TRANSIT* | $1,000 | $2,500 |
| POLLUTION CLEAN-UP AND REMOVAL - EACH LOCATION | $1,000 | $10,000 |
| SALESPERSONS SAMPLES - $2,500 MAX. EACH EMPLOYEE | $1,000 | $10,000 |
| SIGNS* | $1,000 | $5,000 |
| SPOILAGE* | $1,000 | $5,000 |
| TOOLS & EQUIPMENT INCLUDING COMMUNICATION DEVICES - BLANKET* | $1,000 | $5,000 |
| TREES, SHRUBS, PLANTS AND LAWNS - $1,000 MAX. EACH ITEM | $1,000 | $10,000 |
| UNAUTHORIZED BUSINESS CARD USE - $1,000 MAX. PER OCCURRENCE | NONE | $5,000 |
| VALUABLE PAPERS & RECORDS* | NONE | $25,000 |

* The limits for these coverages may be increased. Contact your agent.

Mortgagees and Loss Payees are listed on the Commercial Property Supplemental Declarations by building.

**COMMERCIAL PROPERTY**

3S1016 E4. 3-00                        INSURED'S COPY                        07/24/2005

2 1 2

| BILL | POLICY NUMBER | TC | RODUCER NUMBER | AC | ACCOUN    UMBER | AUDIT |
|------|---------------|-----|----------------|-----|-----------------|-------|
| D | PAS 3682123O | | 18840363 | 150 | MOO8912281-001-00001 | NONE |

BRANCH  Z3  ZURICH GROUP-CO                                              RP   EFF 09/29/2003

488



# ZURICH

## PRECISION PORTFOLIO POLICY
## BUILDINGS AND PERSONAL PROPERTY SCHEDULE
## PRECISION AMERICA

LOCATION    01 BUILDING #   01  1728 SMALLMAN STREET                    PITTSBURGH              PA

PREMISES PRIMARY
OCCUPANCY: TOY AND HOBBY SUPPLY DISTRIBUTOR
INSURED'S INTEREST: OWNER
CONSTRUCTION: JOISTED MASONRY                          PROTECTION CLASS: 004

|  |  | DEDUCTIBLE | LIMIT |
|---|---|---|---|
| SCHEDULED BUILDINGS | REPLACEMENT COST | $1,000 | $1,365,000 |
| SCHEDULED PERSONAL PROPERTY | REPLACEMENT COST | $1,000 | $850,000 |
| FULL GLASS BREAKAGE  -  EXTENDED | | $0 | INCLUDED |
| BACK-UP OF SEWERS & DRAINS | | $1,000 | $25,000 |
| BUILDING ORDINANCE OR LAW | | NONE | $50,000 |

LOCATION    BUILDING #

PREMISES PRIMARY
OCCUPANCY:
INSURED'S INTEREST:
CONSTRUCTION:                                          PROTECTION CLASS:

DEDUCTIBLE     LIMIT

COMMERCIAL PROPERTY
9S1017 Ed. 3-00                    INSURED'S COPY                        07/24/2005

2. 2. 1

| BILL | POLICY NUMBER | TC | PRODUCER NUMBER | AC | ACCOUNT NUMBER | AUDIT |
|---|---|---|---|---|---|---|
| D | PAS 36821230 | | 18840363 | 150 | MO08912281-001-00001 | NONE |

| BRANCH | ZURICH GROUP-CO | | | | | RP  EFF 09/29/2003 |
|---|---|---|---|---|---|---|


# ZURICH

## PRECISION PORTFOLIO POLICY
## SUPPLEMENTAL DECLARATIONS
## PRECISION AMERICA
### (CONTINUED)

| COVERAGE PART(S) AND FORM OR ENDORSEMENT NUMBER | FORM OR ENDORSEMENT NAME AND FORM OR ENDORSEMENT SUPPLEMENTAL INFORMATION |
|---|---|
| PROPERTY<br><br>9S1001          0499 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM<br>MORTGAGEE:<br>LOCATION #:  001        BUILDING #:  001<br>NATIONAL CITY BANK<br>ATTN:  ANN ALLEN<br>P.O. BOX 2977<br><br>PITTSBURGH              PA 15230-2977    LOAN #: |

**COMMERCIAL PROPERTY**

9SS008 Ed. 3-00

INSURED'S COPY

07/24/2005

| BILL | POLICY NUMBER | TC | PRODUCER NUMBER | AC | ACCOUNT NUMBER | AUDIT |
|------|---------------|-----|-----------------|-----|----------------|-------|
| D | PAS 36821230 | | 18840363 | 150 | M008912281-001-00001 | NONE |

| BRANCH    ZURICH GROUP-CO | RP  EFF 09/29/2003 |
|---|---|



**ZURICH**

## PRECISION PORTFOLIO POLICY
## SUPPLEMENTAL DECLARATIONS
## PRECISION AMERICA
### (CONTINUED)

| COVERAGE PART(S) AND FORM OR ENDORSEMENT NUMBER | FORM OR ENDORSEMENT NAME AND FORM OR ENDORSEMENT SUPPLEMENTAL INFORMATION |
|---|---|
| PROPERTY | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| 9S1001          0499 | LOSS PAYEE: |
| | LOCATION #:  001       BUILDING #:  001 |
| | NATIONAL CITY BANK |
| | ATTN:  ANN ALLEN |
| | P.O. BOX 2977 |
| | |
| | PITTSBURGH            PA 15230-2977    LOAN #: |

COMMERCIAL PROPERTY

9S5008 E4. 3-00

INSURED'S COPY

07/24/2005

2. 3. 2

431

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases in quotation marks have special meaning. Refer to the DEFINITIONS section of this form.

Coverage provided by this form is also subject to all the Conditions in the COMMON POLICY CONDITIONS form.

---

## QUICK REFERENCE

SECTION OF THIS FORM      BEGINS ON PAGE

Coverage ........................................................................ 1
 Covered Property ...................................................... 1
 Covered Causes of Loss ............................................ 7
Additional Coverages ................................................. 13
Limits of Insurance .................................................... 18
Deductible .................................................................. 18
Commercial Property Conditions ............................... 18
 Loss Conditions ......................................................... 18
 General Conditions .................................................... 22
Definitions .................................................................. 24

---

## COVERAGE

We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss:

**I. COVERED PROPERTY**

The following items are Covered Property in this policy if shown in the Declarations along with a Limit of Insurance.

A. **Building**, meaning buildings and structures scheduled in the Declarations at a "described premises".

B. The following property if within 1000 feet of the "described premises":

 1. Completed additions;

 2. Permanently installed fixtures, machinery and equipment;

3. Indoor and outdoor equipment and other personal property used to maintain or service the "described premises";

4. Unless covered by other insurance:

 (a) Incomplete additions and their component parts; and

 (b) Materials, equipment, supplies and temporary structures to be used in completing those additions.

C. However, Covered Property does not include:

 1. Land, water, growing crops, bridges, unattached retaining walls, patios or paved surfaces;

---

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995
Copyright, 1998, Maryland Casualty Company, as to additional text and revisions

432

2. Foundations of buildings, supports, structures, machinery or boilers if the foundations are below:

   (a) The lowest basement floor; or

   (b) The surface of the ground, if there is no basement.

3. Property that is more specifically insured in this or another insurance policy.

D. **Newly Acquired or Constructed Buildings.**

If you acquire or commence construction on non-scheduled buildings after the inception date of this policy, such building(s) are Covered Property. However, this Coverage ends for each such building upon the earlier of:

1. The expiration of this policy;

2. The day you report the new property to us; or

3. The 180th day after you acquire the building(s) or commence construction on the building(s).

We will charge additional premium for new values reported from the date you acquire the property or the date construction begins.

E. **Personal Property.**

1. Personal Property located in, on or within 1000 feet of the "described premises" including:

   a. Business personal property owned by you and used in your business;

   b. Personal property of others in your care, custody or control, including the cost of labor, materials or services furnished or arranged by you on that property;

   c. Leased personal property which you have a contractual responsibility to insure; and

   d. "Improvements and betterments".

2. However, Covered Property does not include:

   a. Land, water or growing crops;

   b. Bullion, money or securities;

   c. Contraband, or property in the course of illegal transportation or trade;

   d. Shipments imported into the United States prior to discharge from an aircraft or ocean vessel;

   e. Shipments exported from the United States after being loaded on an aircraft or ocean vessel;

   f. Animals, except

      (1) Animals owned by others and boarded by you; or

      (2) Animals owned by you and held for sale;

   g. Personal property of employees or personal effects of others;

   h. Aircraft;

   i. Self-propelled watercraft while afloat;

   j. (1) Vehicles or self-propelled machines that are:

      (a) Licensed for use on public roads; or

      (b) Operated principally away from the "described premises".

     (2) But we will cover vehicles or self-propelled machines you:

      (a) Manufacture, process or warehouse; or

      (b) Hold for sale, except for automobiles; or

   k. Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance.

F. **Personal Property at Newly Acquired or Constructed Buildings.** Personal Property Coverage extends to Personal Property at newly acquired or constructed buildings. But this Coverage ends for each newly acquired or constructed building upon the earlier of:

1. The expiration of this policy;

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995
Copyright, 1998, Maryland Casualty Company, as to additional text and revisions

493

2. The day you report the new property to us; or

3. The 180th day after you acquire the property or begin the construction.

We will charge additional premium for new values reported from the date you acquire the property or the date construction begins.

G. **Personal Property at Other Locations**, meaning your Personal Property that is at any premises more than 1000 feet from the "described premises".

1. This Coverage includes property at

a. A location you own or occupy that is not a "described premises"; or

b. The premises of a fair or exhibition.

2. This Coverage does not include property:

a. In the course of transportation; or

b. That is more specifically insured while off-premises in this or another insurance policy.

H. **Patterns, Dies and Molds**, located anywhere in the Coverage Territory, including at exhibitions.

1. Patterns are forms or models for imitation, or models for making molds for forming or casting molten metals.

2. Dies are devices that impart desired shapes or finishes to materials. They may be devices that stamp or cut objects. They may also be devices through which metal, plastics or other materials are extruded.

3. Molds are frames around which objects are constructed, or containers in which objects are shaped.

I. **Personal Effects and Personal Property of Employees**, in your care, custody or control while in, on or within 1000 feet of the "described premises". This insurance is excess over any other valid and collectible insurance available to the owner of the property.

J. **Salespersons Samples**, while more than 1000 feet from the "described premises", including in transit. This Coverage applies to samples of goods or products you own while in the custody of a salesperson or any employee who travels with sales samples.

Salespersons Samples does not include:

1. Property that has been sold;

2. Property shipped by mail; or

3. Drugs, jewelry, costume jewelry, furs, fur garments or garments trimmed with fur.

The most we will pay for loss of or damage to property in the custody of any one salesperson or employee in any one occurrence is $2500.

The following exclusions in **EXCLUSIONS** (Section II.A.) do not apply to this coverage:

(1) Exclusion 1.b. Earth Movement.

(2) Exclusion 2.c.(4) Settling, cracking, shrinking, expansion.

(3) Exclusion 2.c.(5) Nesting or infestation, or discharge or release of waste products by insects, birds, rodents or other animals.

K. **Free Standing Fences and Walls**, at the "described premises" and not attached to buildings or other structures. This Coverage does not include retaining walls that are used to contain water.

L. **Antennae and Satellite Dishes**, meaning radio or television satellite dishes and antennae, including their lead-in wiring, masts and towers within 1000 feet of a "described premises."

M. **Signs**, wherever located in the Coverage Territory. This Coverage applies to signs:

1. Owned or rented by you; or

2. Owned by others but in which you have a financial interest.

N. **Outdoor Trees, Shrubs, Plants and Lawns**, at the "described premises", other than "stock". This Coverage includes debris removal expense. However, we will only pay for loss or damage caused by the following Causes of Loss:

1. Fire;

2. Lightning;

3. Explosion;

4. Riot or Civil Commotion; or

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995
Copyright, 1998, Maryland Casualty Company, as to additional text and revisions

494

5.   Aircraft.

The most we will pay for loss or dam-
age to any one tree, shrub or plant is
$1000.

O.  **Personal Property in Transit,** meaning
personal Property you own and are pick-
ing up from others, or are delivering to
others.

1.   This Coverage applies only to prop-
erty while it is in transit more than
1000 feet from the "described pre-
mises" and:

a.  In or on a vehicle owned, leased
or operated by you; or

b.  In the custody of a common
carrier, contract carrier or reg-
istered mail carrier while in transit
between points in the Coverage
Territory. When title to a ship-
ment passes to the consignee,
if the consignee refuses to pay
because the shipment is lost or
damaged, you may elect to claim
that loss under this insurance.

2.   However, this coverage does not
apply to:

a.  Cargo that belongs to others that
you are transporting for a fee,
other than incidental delivery
charges;

b.  Cargo on your vehicle if that
cargo has been stationary with
no intent to move it within the
next 72 hours;

c.  Cargo while it is waterborne,
unless it is on a barge on inland
waterways within the continen-
tal United States;

d.  Freight charges;

e.  Live animals; or

f.  Salespersons samples.

The following exclusions in **EXCLUSIONS**
(Section II.A.) do not apply to this cov-
erage:

(1)  Exclusion 1.b. Earth Movement.

(2)  Exclusion 1.g. Water.

(3)  Exclusion 2.c.(4) Settling, cracking,
shrinking, expansion.

(4)  Exclusion 2.c.(5) Nesting or infesta-
tion, or discharge or release of waste

products by insects, birds, rodents
or other animals.

P.  Installation Property.

1.   This Coverage applies to Personal
Property being installed by you in
work you are performing while at a
job site or temporarily warehoused
elsewhere anywhere in the Cover-
age Territory:

a.  Awaiting and during installation
or testing; and

b.  Awaiting acceptance by the buyer.

If your Installation coverage limit is
sufficient, coverage also extends to
temporary structures at the job site
as well as site preparation costs.

As used in this coverage, the term
job site means a premises where you
are installing, repairing or erecting
property. However, it does not in-
clude the construction site of a dam,
tunnel, flood control project, bridge,
overpass, pier, wharf or dock.

2.   This coverage does not apply to per-
sonal property that is not a part of
or intended to become a part of the
installation.

3.   This coverage ends at any job site
at the earliest of the following:

a.  Your interest in the property
ceases;

b.  The buyer accepts the property;
or

c.  This policy terminates.

Q.  **Tools and Equipment, Including Commu-
nication Devices.**

1.   This Coverage applies to the follow-
ing property located anywhere in the
Coverage Territory:

a.  Your tools and tools belonging
to your employees, including
spare parts and accessories;

b.  Contractors equipment you own
or for which you may be legally
liable; and

c.  Mobile communications equip-
ment not permanently installed in
a vehicle.

2.   This Coverage does not include:

a.  Automobiles, motor trucks, trac-
tors, trailers or other vehicles

435

designed and principally used for highway transportation;

b. Aircraft or watercraft, or property while airborne or waterborne;

c. Property located underground; or

d. Contraband or property in the course of illegal transportation or trade.

The most we will pay for loss of or damage to any item under this Coverage is $2500, unless the item is scheduled along with a higher limit in the Declarations of this policy.

The following exclusion in EXCLUSIONS (Section II.A.) does not apply to this coverage:

Exclusion 1.b. Earth Movement.

**Extension – Newly Acquired Equipment.** If you acquire new contractors equipment during the Policy Period of a type already covered in this policy by this Coverage, we will automatically cover that property up to 180 days, but not beyond the end of the policy period. The most we will pay in any one occurrence under this extension is $250,000. You must notify us within 180 days of the acquisition of the property. We will charge additional premium from the date of acquisition.

**Insurance to Value.** All owned property included in this Coverage must be insured for at least 80% of its value at the time of loss or damage. If it is not, you will incur a penalty. The penalty is that we will only pay the proportion of the loss or damage that the Limit of Insurance for this Coverage bears to 80% of the value of the owned property at the time of loss or damage.

R. **Accounts Receivable,** meaning the money due you that you are unable to collect from your customers as a result of loss of or damage to your records of accounts receivable.

1. This coverage applies to:

a. Evidences of debt in connection with credit or charge cards;

b. Interest charges on any loan that you secure to offset amounts you are unable to collect pending our payment of these amounts;

c. Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

d. Other reasonable expenses you incur to re-establish your records of accounts receivable.

2. This coverage does not apply to:

a. Contraband or property in the course of illegal transportation or trade; or

b. Electronic data processing media or software.

3. Accounts Receivable loss payment will be determined as follows:

a. When there is proof that a covered loss has occurred but you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the amount will be computed as follows:

(1) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss occurs; and

(2) Adjust that total for any normal fluctuation in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

b. We will deduct from the total amount of accounts receivable, however that amount is established:

(1) The amount of the accounts for which there is no loss or damage;

(2) The amount of the accounts that you are able to re-establish or collect;

(3) An amount to allow for probable bad debts that you are normally unable to collect; and

(4) All unearned interest and service charges.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995
Copyright, 1998, Maryland Casualty Company, as to additional text and revisions

426

c. If you recover the amount of any accounts receivable that were included in the amount of the paid loss, you will return the recovered amount to us, up to the total amount of the paid loss. You will keep the amount of any accounts receivable you recover in excess of the amount of the paid loss.

The following exclusions in EXCLUSIONS (Section II.A.) do not apply to this coverage:

(1) Exclusion 1.b. Earth Movement.

(2) Exclusion 2.c.(4) Settling, cracking, shrinking, expansion.

(3) Exclusion 2.c.(5) Nesting or infestation, or discharge or release of waste products by insects, birds, rodents or other animals.

S. **Fine Arts,** meaning property that is rare or has historic or artistic value, such as paintings, etchings, drawings, rare books, rugs, tapestries, art glass, stained glass, murals, decoratively painted walls and other bona fide works of art or rarity that you own or are in your care, custody or control. This coverage applies to property located anywhere in the Coverage Territory except:

1. On exhibition at fairgrounds; or

2. On the premises of any national or international exposition.

The most we will pay for loss of or damage to any item under this Coverage is $2500, unless the item is scheduled along with a higher limit in the Declarations of this policy. Scheduled items will be valued at the amount shown in the Declarations. All other items will be valued at actual cash value.

**Extension — Newly Acquired Property.** If you acquire new Fine Arts during the Policy Period, we will automatically cover that property up to 180 days, but not beyond the end of the Policy Period. The most we will pay in any one occurrence under this extension is the lesser of 25% of the total limits for Fine Arts in this policy or $10,000. You must notify us within 180 days of the acquisition of the property. We will charge additional premium from the date of acquisition.

The following exclusions in EXCLUSIONS (Section II.A.) does not apply to this coverage:

(1) Exclusion 1.b. Earth Movement.

(2) Exclusion 1.g. Water.

(3) Exclusion 2.c.(5) Nesting or infestation, or discharge or release of waste products by insects, birds, rodents or other animals.

T. **Electronic Data Processing Equipment and Media,** meaning data processing, and word processing and telephone systems and software you own or are in your care, custody or control.

1. This Coverage includes:

a. Equipment, component parts and related peripheral equipment such as cables, modems, telephone handsets and fax machines;

b. Media such as punch cards, tapes, discs, drums, or other magnetic recording or storage devices including the information stored on the media; and

c. Software programs and documentation used to operate the systems.

2. This Coverage does not include property

a. You hold for sale, distribute or manufacture; or

b. That cannot be duplicated or replaced with similar property of equal quality, unless it is scheduled in the Declarations.

The most we will pay for loss of or damage to any data processing item under this Coverage is $5000, except for any item specifically scheduled with a higher limit in the Declarations of this policy.

With respect to the above coverage, the term data processing item means an individual hardware component or peripheral (including related cards and cables), software program or media used with a specific software program.

The following exclusions in EXCLUSIONS (Section II.A.) do not apply to this coverage:

(1) Exclusion 1.b. Earth Movement.

(2) Exclusion 2.c.(4) Settling, cracking, shrinking, expansion.

(3) Exclusion 2.c.(5) Nesting or infestation, or discharge or release of waste

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995
Copyright, 1998, Maryland Casualty Company, as to additional text and revisions

497

products by insects, birds, rodents or other animals.

(4) Exclusion 2.c.(6)(b) Changes or extremes of temperature.

U. **Valuable Papers and Records,** meaning inscribed, printed or written documents, manuscripts or records including abstracts, books, deeds, drawings, films, negatives, transparencies, tapes, maps, mortgages or credit card records. We will pay the cost incurred to research, replace or restore the information on lost or damaged Valuable Papers and Records.

This Coverage does not include:

1. Electronic data processing media or software;

2. Money or securities;

3. Valuable papers and records that cannot be replaced with others of like kind and quality;

4. Property held as samples or for delivery after sale;

5. Property in storage away from the "described premises"; or

6. Contraband, or property in the course of illegal transportation or trade.

The following exclusions in **EXCLUSIONS** (Section II.A.) do not apply to this coverage:

(1) Exclusion 1.b. Earth Movement.

(2) Exclusion 2.c.(4) Settling, cracking, shrinking, expansion.

(3) Exclusion 2.c.(5) Nesting or infestation, or discharge or release of waste products by insects, birds, rodents or other animals.

II. **COVERED CAUSES OF LOSS**

RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE unless the loss or damage is excluded or limited as described below:

A. **EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **Ordinance or Law** –

   (1) The enforcement of any ordinance or law:

   (a) Regulating the construction, use or repair of any property; or

   (b) Requiring the tearing down of any property, including the cost of removing its debris.

   (2) This exclusion, Ordinance or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

   b. **Earth Movement**

   (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (2) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

   All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   c. **Governmental Action** – Seizure or destruction of property by order of governmental authority. But we will pay for loss or damage caused by or resulting

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995
Copyright, 1998, Maryland Casualty Company, as to additional text and revisions